NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>VINCENT DEMARCO,<br><br>        Defendant. | Crim. No. 94-415 (WGB)<br><br>**OPINION and ORDER** |

**APPEARANCES:**

CHRISTOPHER J. CHRISTIE
United States Attorney
By:  Marion Percell, Esq., AUSA
970 Broad Street
Newark, New Jersey  07102

    Attorneys for United States

John H. Yauch, Esq.
OFFICE OF THE FEDERAL PUBLIC DEFENDER
972 Broad Street
Newark, NJ 07102

    Attorney for Defendant

**FINDINGS OF FACT**

In April of 1980, Mr. Vincent DeMarco shot his mother to death to protect her from the torture that Mr. DeMarco thought the mob had in store for her.  He declined an insanity defense and was sentenced to prison when he was released in November 1992 after serving twelve years.  Shortly thereafter he robbed the

Washington Savings Bank-a crime to which he immediately confessed in order to find a safe environment in prison.  See Report of Dr. Steven S. Simring, M.D. of July 26, 2004. (Defendant's Exhibit ("D. Ex.") C).

On October 28, 1994, this Court entered an order (1) finding that the defendant Vincent J. DeMarco committed the robbery of the Washington Savings Bank in Hoboken, New Jersey on July 9, 1993,(2) adjudging him not guilty only by reason of insanity pursuant to 18 U.S.C. § 17 and 4242(b)(3), and (3) committing him to the Federal Correctional Institute at Butner, North Carolina pursuant to 18 U.S.C. § 4243(e). (D. Ex. E).

From the time of his commitment, the Court received Annual Forensic Updates.  By letter of October 10, 1996, the Bureau of Prisons advised the Court that Mr. DeMarco's mental condition had improved but that efforts to place Mr. DeMarco in a state hospital in New Jersey for a transitional period were unsuccessful because the plan was denied by state authorities.  A community correction center in New Jersey also refused to accept Mr. DeMarco and another was willing to accept him under the supervision of the Probation Department.  However, the Probation Department declined the assignment, believing Mr. DeMarco was "too dangerous for release."  The Bureau suggested that if the Court agreed with the Bureau's plan to release Mr. DeMarco under specified conditions of supervision the Bureau would file a

Certificate of Improved Mental Condition and Request for Conditional Release From Psychiatric Hospital with the Clerk of the Court.  See 18 U.S.C. § 4243(f).  The Bureau asked the Court for further guidance in the matter.  The Court responded by letter of November 12, 1986 as follows: "In the absence of a certificate filed pursuant to [18 U.S.C. § 4243(f)] I am disinclined to take any judicial action.  In the event that your office decides to file the certificate in accordance with the procedures set forth above, I would then schedule a hearing to determine whether or not Mr. DeMarco should be released."

There the matter stood until Assistant United States Attorney, Marion Percell, filed a motion in June 2003 for a hearing pursuant to 18 U.S.C. § 4243(f) to determine whether Vincent DeMarco should be released.  In August 2003, the Court entered an order appointing Dr. Steven Simring as an expert to conduct a psychiatric examination of Mr. DeMarco.  In June 2004, the Court was advised by Ms. Percell that Dr. Simring made arrangements to examine and evaluate Mr. DeMarco at FCC Butner in North Carolina in June.  Dr. Simring's report is dated July 26, 2004.  (See D. Ex. C).

By letter of March 22, 2005, A.F. Beehler, Warden of FCC Butner filed with the Clerk of the Court a Certificate of Improved Mental Condition and Request for Release From Psychiatric Hospitalization pursuant to 18 U.S.C. § 4243(f).  The

letter advised: "In our annual Update to the Court, dated February 24, 2005, the treatment team offers the opinion that Mr. DeMarco no longer meets the criteria for continued inpatient commitment and that his unconditional release would not pose a substantial risk of bodily injury to another person or serious damage to the property of others." ( D. Ex. A).

The Court held an evidentiary hearing on December 13, 2005. Mr. DeMarco was present and represented by John H. Yauch, Assistnat Federal Public Defender.  The first witness to testify was Dr. Edward Landis, a psychologist and the director of clinical training at the federal medical center in Butner.  It was the opinion of Dr. Landis that Mr. DeMarco suffered a mental illness known as "delusional disorder persecutory type."  It was also his opinion that Mr. DeMarco's unconditional release would no longer pose a substantial risk of bodily injury to another person or serious damage to property of another.

In response to Dr. Simring's opinion that Mr. DeMarco is not suitable for release at the present, Dr. Landis stated:  "In reviewing Dr. Simring's report, he certainly outlines at length the numerous interesting crazy belief that Mr. DeMarco articulates through his letters[1] and then told Dr. Simring

---

[1] Mr. DeMarco's letters to the Court over the years are relevant to this Court's determination.  They are in evidence but too voluminous to even summarize.  They fully support Dr.Simring's opinion.

4

personally." But Dr. Landis discounted the opinion of Dr. Simring by noting: "What I did not find in the report was a detailed accounting of how that symptom picture relates to his risk if placed in the community." Although recognizing that the letters to the court were indicative of a delusional order, Dr. Landis did not feel that they had any bearing on the suitability of Mr. DeMarco's release.

Dr. Steven Simring then testified. Dr. Simring is board certified in psychiatry as well as in forensic psychiatry and until recently was a director of medical student education at New Jersey Medical School in Newark and is now director of the forensic psychiatry training program at Columbia and Cornell in New York. Dr. Simring has been appointed as a Court expert on other occasions by members of this Court. Dr. Simring had examined Mr. DeMarco in 1994 with respect to the bank robbery charge and testified before this court on October 27, 1994. It was his opinion that Mr. DeMarco suffered from paranoid schizophrenia and that he met the standards for legal insanity. In connection with the matter now before the Court, Dr. Simring examined Mr. DeMarco on June 17, 2004 at Butner and again on December 11, 2005 at the Passaic County Jail.

It was Dr. Simring's opinion that Mr. DeMarco is a paranoid schizophrenic, that his thoughts about explosions, violence, and suicide cause a psychiatrist "to have a great deal of concern for

personal safety" and that he poses "a grave danger to himself and others."  As to the recommendations from the Federal Medical Center, Dr. Simring was "frankly astounded."

The Court credits Dr. Simring's testimony and accepts his opinion that "to a reasonable degree of medical probability Mr. DeMarco's release to the community would create an imminent and substantial risk of bodily injury to other people."[2]  Even Dr. Landis acknowledged that some of the delusions in Mr. DeMarco's letters to the court "sound ominous."  What is particularly disturbing is that despite the murder of his mother, a threat to a state court judge and the staged bank robbery along with the original diagnosis of paranoid schizhophrenia,  Mr. DeMarco received no medication at Butner-he refused any—and was essentially warehoused.

If Mr. DeMarco began taking medications and his delusional

---

[2] In assessing the credibility of each witness in this case, the Court has taken into consideration how well each witness was able to recall and describe the things testified to, the manner of the witness while testifying, whether the witness had an interest in the outcome of the case or any bias or prejudice concerning any party or matter involved in the case, whether the witness' testimony was contradicted by what that witness had said or done at another time, by the testimony of other witnesses, or by other evidence and how reasonable the witness' testimony was in light of all the evidence in the case. Miller v. Mercy Hospital, Inc., 720 F.2d 356, 365 (4th Cir. 1983), cert. denied, 470 U.S. 1083 (1985) (citing 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2586 (1995))("Credibility involves more than a witness' demeanor and comprehends an overall evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence.").

thinking abates, Dr. Simring felt that over time Mr. DeMarco could be in a position where a Conditional Discharge would be a reasonable possibility.  Dr. Simring also stated that he would recommend  "to the court to transfer him to Rochester where hopefully he'll get some treatment."[3]  As it now stands Mr. DeMarco would pose "a high great danger" of "a substantial risk of bodily injury to other persons if he were released today."

The Court finds that the evidence does not support the unconditional release of Mr. DeMarco.  He suffers from paranoid schizophrenia and in the absence of medication or treatment would pose a substantial risk of bodily injury to another person or serious damage of property of another due to this untreated mental disorder.  His terror of the injuries that he feels would befall him in an unprotected environment are likely to cause him to repeat an episode like the bank robbery in order to be incarcerated.

It is beyond comprehension that the Bureau finds Mr. DeMarco a candidate for unconditional release.  On the present record Mr. DeMarco does not even qualify for a conditional release.  The credible evidence of record does not meet the criteria for release under 18 U.S.C. § 4243.  The Court has not

---

[3]On July 30,2006 the Court received a copy of an email from Kara Christenson, legal assistant at the Federal Medical Center in Rochester, MN, advising that Mr. DeMarco is currently designated at FMC Rochester pursuant to his commitment under 18 U.S.C. § 4243.

been presented with any evidence of possible conditions that could be placed upon Mr. DeMarco's release that could be expected" to alleviate any harm that otherwise might result from the patient's unmodified behavior.  See United States v. McNeil, 434 F.2d 502, 513 (D.C. Cir. 1970).

## CONCLUSIONS OF LAW

18 U.S.C. § 4243 provides the legal standards governing whether or not to release Mr. DeMarco. 18 U.S.C. § 4243(f) provides that upon the director of the facility where an acquitted person is hopitalized filing a certificate that the person has recovered from his mental disease and on motion of the attorney for the government, the court shall hold a hearing pursuant to 18 U.S.C. § 4243(d) to determine whether he should be released.  Section 4243(f) spells out that the standard that governs the court in making that determination is that provided by § 4243(d).  Whereas here, with a bank robbery, there was a substantial risk of bodily injury or a substantial risk of serious damage to the property of another the burden of proving that the release of the acquitted person "would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect" is by clear and convincing evidence.  Id.  "Clear and convincing evidence is evidence that places in the fact finder

8

an 'abiding conviction that the truth of [the] factual contentions are highly probable.'" Merck & Co. v. Teva Pharms. USA, Inc., 228 F. Supp. 2d 480, 496 (D. Del. 2002) (citing Colorado v. New Mexico, 467 U.S. 310, 316 (1984)).

The Court concludes that the burden of proving by clear and convincing evidence that Mr. DeMarco's release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect has not been met. The Court concludes that Mr. DeMarco's release constitutes a substantial risk of bodily injury to another person or serious damage to property of another. His immediate discharge is therefore denied.

Since the Court has not been presented with a proposed regimen of medical, psychiatric or psychological care or treatment certified by the director of the facility in which Mr. DeMarco is committed, there is no basis for the court to even consider a conditional release.

**SO ORDERED.**

                                            /s/ William G. Bassler
                                       WLLIAM G. BASSLER, U.S.S.D.J.

Dated: August 7, 2006